1
2
3
4
**UNITED STATES DISTRICT COURT**
5
**DISTRICT OF NEVADA**

6    ANDREW HILFORD,                                  3:12-cv-00329-MMD-WGC

7                                    Plaintiff,       **REPORT & RECOMMENDATION**
                                                      **OF U.S. MAGISTRATE JUDGE**
8          v.

9    CHRISTOPHER ROWLEY, et. al.,

10                                   Defendants.

11
_____

12         This Report and Recommendation is made to the Honorable Miranda M. Du, United

13   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28

14   U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15   Defendant's Motion for Summary Judgment. (Doc. # 54.)[1] Plaintiff opposed the motion

16   (Doc. # 59) and Defendant filed a reply (Doc. # 62.) After a thorough review, the court

17   recommends that Defendant's motion be granted.

18                                   **I. BACKGROUND**

19         Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

20   and at all times relevant to this action was housed at Ely State Prison (ESP). (Pl.'s Compl.,

21   Doc. # 7.) He is a pro se litigant who brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) The

22   only defendant is Sergeant William Gittere.

23         On screening, the court concluded that Plaintiff states a colorable claim that Sergeant

24   Gittere was deliberately indifferent to his health and safety when Plaintiff complained that

25   chemical agents sprayed during a cell extraction remained on his bedding and Gittere denied his

26   emergency grievances and told him to send the bedding to the laundry, which he knew Plaintiff

27   _____

28         [1] Refers to the court's docket number. Unless otherwise noted all page number references to briefing are to
     the court's docketed page numbers.

1    would be unable to do for another six days. (*See* Screening Order, Doc. # 3 at 2.) One of the

2    emergency grievances attached to the complaint indicated he was complaining about the

3    chemical agents continuing to irritate his skin, eyes and breathing. (Doc. # 7 at 13.) His

4    remaining claims were dismissed. (*Id.*)

5    **II. LEGAL STANDARD**

6    "The purpose of summary judgment is to avoid unnecessary trials when there is no

7    dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

8    F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

9    judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

10   525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

11   (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

12   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13   Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

14   issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

15   250 (1986).

16       A party asserting that a fact cannot be or is genuinely disputed must support the
         assertion by:
17       (A) citing to particular parts of materials in the record, including depositions,
         documents, electronically stored information, affidavits or declarations,
18       stipulations (including those made for purposes of the motion only), admissions,
         interrogatory answers, or other materials; or
19       (B) showing that the materials cited do not establish the absence or presence of a
20       genuine dispute, or that an adverse party cannot produce admissible evidence to
         support the fact.

21   Fed. R. Civ. P. 56(c)(1)(A), (B).

22       If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

23   made on personal knowledge, set out facts that would be admissible in evidence, and show that

24   the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

25       In evaluating whether or not summary judgment is appropriate, three steps are necessary:

26   (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

27   to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

28   *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

1    the outcome of the suit under the governing law will properly preclude the entry of summary

2    judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

3            In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

4    "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

5    come forward with evidence which would entitle it to a directed verdict if the evidence went

6    uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

7    the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

8    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

9    omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

10   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

11   an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party

12   failed to make a showing sufficient to establish an element essential to that party's case on which

13   that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-

14   25 (1986).

15           If the moving party satisfies its initial burden, the burden shifts to the opposing party to

16   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

17   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

18   material fact, the opposing party need not establish a genuine dispute of material fact

19   conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a

20   jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*

21   *v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation

22   omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory

23   allegations that are unsupported by factual data. *Id*. Instead, the opposition must go  beyond the

24   assertions and allegations of the pleadings and set forth specific facts by producing competent

25   evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

26           That being said,
             [i]f a party fails to properly support an assertion of fact or fails to properly address

27           another party's assertion of fact as required by Rule 56(c), the court may: (1) give
             an opportunity to properly support or address the fact; (2) consider the fact

28           undisputed for purposes of the motion; (3) grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that
the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine
the truth but to determine whether there is a genuine dispute of material fact for trial. *See*
*Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all
justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is
merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-
50 (citations omitted).

### III. DISCUSSION

It is undisputed that on January 17, 2012, a cell extraction was performed in order to
conduct a search of Plaintiff's cell. (Doc. # 54 at 2; Doc. # 54-2 at 3; Doc. # 7 at 3-4.) The
officers involved in the extraction, including Sergeant Gittere, resorted to using chemical agents
to coerce Plaintiff's compliance in being removed from the cell. (*Id*.) According to Plaintiff, two
bursts of chemical agents were utilized for approximately three seconds each. (Doc. # 59 at 3.)
Plaintiff was forcibly removed from his cell; the use of force in the extraction is not the subject
of this lawsuit. (Doc. # 54 at 2; Doc. # 54-2 at 3; Doc. # 7 at 3-4.) After Plaintiff was removed
from his cell, he was evaluated by medical staff, taken to the shower to remove the chemical
agent from his skin and to clear his sinuses, and returned to his cell. (Doc. # 54 at 2; Doc. # 57-1
at 12.)

At that time, Plaintiff noticed that the bedding that was on his bed when the chemical
agents were sprayed was still on his bed. (Doc. # 7 at 4.) Plaintiff contends that he verbally asked
Sergeant Gittere if he could get clean bedding, and he responded: "I'll think about it." (*Id*.) On
January 18, 2012, at 2:19 a.m., Plaintiff sent an emergency grievance stating: "I would like to
know if I can get a clean bed roll. After cell extraction the C/Os were walking all over my
bedding and they have chemical agents all over them. Thank you." (Doc. # 54-1 at 16; Doc. # 7
at 4, 11.)

The response to the grievance marked 2:52 a.m. on January 18, 2012 stated: "Not an
emergency-use regular grievance process. You have bedding and a new mattress." (*Id*.)

1    Then, at approximately 8:00 p.m. on January 18, 2012, Plaintiff sent another emergency

2    grievance, stating:

3    After a cell extraction was performed on 1-17-12, I was placed back in my cell
     with a new mattress and the same bedding I had when my room was sprayed with
     chemical agents. My blanket and sheets were covered with chemical agents, plus
4    there were footprints all over my bedding even after hand washing several times,
     it continues to irritate my skin, face and eye, and makes it hard to breath. I would
5    like to be issued a clean bedroll until I can send my bedding to laundry. I am
     being subjected to unlawful retaliation and your violating my 14th Amendment
6    right to due process as well as cruel and unusual punishment.

7    (Doc. # 7 at 13; Doc. # 54 at 2-3; Doc. # 54-1 at 18.)

8    The response stated: "Not an emergency-use normal grievance process. Send your

9    bedding to the laundry per unit SOP." (*Id*.)

10   Plaintiff and Sergeant Gittere agree that Plaintiff could not send his items out for

11   laundering for another six days, on January 24, 2012. (Doc. # 7 at 4; Doc. # 54 at 3; Doc. # 54-1

12   at 34.)

13   Plaintiff contends that he sent a third grievance on January 19, 2012, at 8:54 a.m., and

14   never received a response. (Doc. # 7 at 4, 15.) Defendants have no record of this grievance being

15   submitted. (Doc. # 54 at 3.) He submitted a copy of this grievance with his complaint, but it is

16   illegible. (Doc. # 7 at 15.) It does appear that it was signed as being received by prison staff;

17   however, Defendant contends that it is too illegible to determine the authenticity of the signature.

18   (Doc. # 54 at 3; Doc. # 54-1 at 3 ¶ 7.)

19   Defendants have submitted Plaintiff's medical records for the relevant time period. On

20   January 18, 2012, the same date Plaintiff sent his emergency grievance stating that the chemical

21   agents were irritating hi skin, face and eye and making it hard to breathe, Plaintiff sent a medical

22   kite asking to be seen by medical staff related to his thumb which he claimed was swollen and

23   causing him pain following the cell extraction. (Doc. # 57-1 at 5.) In response he was told he was

24   scheduled to see a provider. (*Id*.) Defendants are correct that this kite makes no reference to

25   irritation to his skin, face or eyes or trouble breathing related to the chemical agents he claimed

26   were present on his bedding.

27   On January 20, 2012, Plaintiff sent another medical kite, stating: "I just wanted to say

28   that I am feeling better today and I no longer want to be seen by the doctor." (Doc. # 57-1 at 6.)

- 5 -

1    This was noted, and Plaintiff was removed from the schedule. (*Id.*)

2        On January 4, 2012, Plaintiff submitted a medical kite asking to be seen regarding neck

3    and back pain. (Doc. # 57-1 at 7.) He was seen on February 5, 2012. (*Id.* at 9.) It was noted that

4    he was being seen for complaints of neck and back pain that were "exacerbated by cell extraction

5    1/17/12." (*Id.*) The progress notes contain no reference to complaints of irritation to the skin,

6    face or eye or any complaints of trouble breathing related to the chemical agents on his bedding

7    or otherwise.

8        According to Sergeant Gittere, at no time did Plaintiff "appear to be in distress or

9    otherwise appear to be experiencing effects relating to the use of chemical agents" which would

10   have presented an excessive risk to his health. (Doc. # 54-2 at 3 ¶ 10.) "Based upon [Sergeant

11   Gittere's] observations of inmate Hilford, he did not appear to be experiencing any shortness of

12   breath or other serious complaints, nor did he express to me any serious complaints which would

13   have alerted me to a potentially excessive risk to his health and safety." (*Id.*) When Sergeant

14   Gittere denied Plaintiff's emergency grievances, Plaintiff did not make any request to Sergeant

15   Gittere to be seen by medical staff or ask for medical attention after his grievances were denied.

16   (*Id.* ¶ 11.) Sergeant Gittere maintains that he did not deny Plaintiff's grievances to cause him

17   harm, but because they did not raise an issue constituting an "emergency" under Administrative

18   Regulation (AR) 740. (*Id.* at 4 ¶ 13.)

19       Under the Eighth Amendment, prison conditions should not "involve the wanton and

20   unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime

21   warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison

22   conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates

23   receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

24   guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting

25   *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)). "It is 'cruel and unusual punishment to hold

26   convicted criminals in unsafe conditions.'" *Helling v. McKinney*, 509 U.S. 25, 33 (quoting

27   *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982)).

28       To succeed on an Eighth Amendment claim, the prisoner must establish prison officials

- 6 -

1   were deliberately indifferent to his health or safety. *Farmer*, 511 U.S. at 834. First, "the

2   deprivation alleged must be, objectively, sufficiently serious...; a prison official's act or omission

3   must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id*. (citations

4   and quotations omitted). In the context of alleged exposure to harmful substances in the

5   environment, the Supreme Court has stated that the court must assess "whether society considers

6   the risk that the prisoner complains of to be so grave that it violates contemporary standards of

7   decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36 (emphasis

8   original).

9       Second, the inmate must demonstrate that the prison official "kn[e]w of and disregard[ed]

10  an excessive risk to inmate health or safety; the official must both be aware of facts from which

11  the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

12  the inference." *Id*. at 837.

13      Plaintiff places much emphasis on the wording of AR 406.03 which governs the use of

14  chemical agents at NDOC and states that "[i]f necessary, all contaminated or affected areas will

15  be cleaned with soap and water solution. Bedding and cell supplies are to be removed and

16  cleaned prior to reissue." (Doc. # 59 at 1.) An analysis of whether an inmate's Eighth

17  Amendment rights have been violated, however, is not governed by an institution's regulations.

18  The applicable standard is whether or not the defendant was deliberately indifferent to a

19  sufficiently serious risk to Plaintiff's health.

20      Plaintiff also makes reference to the health effects he experienced while he was being

21  extracted from his cell. (Doc. # 59 at 2.) Again, this is not relevant to the court's inquiry. The

22  court is concerned with the health effects, if any, Plaintiff experienced *after* he was returned to

23  his cell, when he sent the emergency grievances to Sergeant Gittere.

24      The evidence in the record demonstrates that when Sergeant Gittere denied Plaintiff's

25  emergency grievances on January 18, 2012, Plaintiff did not file a medical kite or otherwise

26  request medical treatment for the irritation from the chemical agents that he referenced in the

27  emergency grievance. When he did file a medical kite, he did not reference these issues.

28  Moreover, he filed another medical kite two days later stating that he felt better and that there

1    was no reason to be seen. The next time Plaintiff kited to be seen by medical staff, on February

2    4, 2012, there was also no mention of these issues, and the progress notes from that visit are

3    consistent with the notion that Plaintiff did not raise this issue.

4          In his opposition, Plaintiff claims that the reason he did not raise this issue in his medical

5    kites is because departmental regulations limit him to asserting one issue per kite. (Doc. # 59

6    at 3.) First, ESP policies do not limit an inmate's medical kite to one issue. (*See* Doc. # 62-1 at 3

7    ¶ 4.) More importantly, Plaintiff does not explain why he did not just file another medical kite

8    asserting this issue if he believed he was limited to asserting just one medical issue per kite.

9          The record demonstrates that Plaintiff did not face an objectively, sufficiently serious risk

10   to his health by being exposed to the chemical agents he asserts remained on his bedding

11   following the cell extraction. Taking as true Plaintiff's assertion that he was exposed to chemical

12   agents on the bedding and this caused him at least some initial irritation to his skin, eye and face

13   and difficulty breathing, but not so much so as to cause him to file a medical kite or to raise the

14   issue in the medical kite he did file on January 18, 2012, the court cannot conclude that society

15   would consider this is a risk "so grave that it violates contemporary standards of decency to

16   expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36 (emphasis original).

17   Therefore, summary judgment should be granted in Sergeant Gittere's favor.

## IV. RECOMMENDATION

19         **IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING**

20   defendant Sergeant Gittere's Motion for Summary Judgment (Doc. # 54) and entering judgment

21   in favor of Defendant and against Plaintiff in this action.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: June 4, 2014

William G. Cobb

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE